UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEVEN M. CRATTY,

       Plaintiff,

v.                                                                Case No. 1:05-CV-414
                                                                  Hon. Gordon J. Quist

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

_____/

## REPORT AND RECOMMENDATION

       Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for disability insurance benefits (DIB).

       Plaintiff was born on December 16, 1956, completed high school and attended special job training as a flexographic printer journeyman (AR 38, 59).[1]  Plaintiff stated that he became disabled on February 25, 2002 (AR 38).  He had previous employment as a pressman (AR 54). Plaintiff identified his disabling conditions as sciatic nerve pain and numbness in left leg and foot (AR 53).  After administrative denial of plaintiff's claim, an Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying these claims on February 18, 2005 (AR 13-21).  This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

---

[1] Citations to the administrative record will be referenced as (AR "page #").

## I.  LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence.  42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990).  "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).   A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only.  This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).  The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence.  *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits.  A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905

F.2d 918, 923 (6th Cir. 1990).  In applying the above standard, the Commissioner has developed a

five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability.  First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits.  Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations

caused by her impairments and the fact that she is precluded from performing her past relevant work

through step four.  *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003).

However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant

number of jobs in the economy that accommodate the claimant's residual functional capacity

(determined at step four) and vocational profile."  *Id.*  If it is determined that a claimant is or is not

disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861

F.2d 991, 993 (6th Cir. 1988).

## II.  ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation.  Following the five steps,

the ALJ initially found that plaintiff had not engaged in substantial gainful activity since the alleged

onset date of disability (AR 20). Second, the ALJ found that he suffered from the severe impairment

of degenerative disc disease of the lumbar spine (AR 20).  At the third step, the ALJ found that

plaintiff did not have an impairment or combination of impairments that met or equaled the

requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 20).  The ALJ

decided at the fourth step that plaintiff had the residual functional capacity (RFC):

> for unskilled work at the light exertional level.  The claimant needs a sit/stand option.
> He can do no prolonged walking.  The claimant is unable to work around moving
> machinery or at unprotected heights.  He can not use foot controls.

(AR 20).  The ALJ further concluded that plaintiff was unable to perform his past relevant work (AR

20).

At the fifth step, the ALJ determined that plaintiff was capable of performing a

significant range of light work (AR 20).  Specifically, the ALJ found that an individual with

plaintiff's limitations could perform the following jobs in Michigan: clerical assistant (6,000 jobs);

bench assembler (8,000 jobs); and packager (8,000 jobs) (AR 20). The ALJ also found plaintiff's

allegations regarding his limitations as not totally credible (AR 20).  Accordingly, the ALJ

determined that plaintiff was not under a "disability" as defined by the Social Security Act and

entered a decision denying benefits (AR 21).

## III.  ANALYSIS

Plaintiff raises the following issue on appeal:

**Whether substantial evidence of record as a whole supports the
final decision of the Commissioner of Social Security
(Commissioner), that plaintiff, Steven M. Cratty, was not
disabled, and therefore was not entitled to Social Security
Disability insurance benefits.**

Plaintiff contends that the ALJ's RFC determination was not supported by the testimony and medical records, which reflect two major surgical interventions. Plaintiff further states that diagnostic studies support his descriptions of disabling pain. The gist of plaintiff's claim is that the ALJ did not properly evaluate his claim of disabling pain.

An ALJ's evaluation of a claimant's pain is admittedly inexact. *Jones v. Secretary of Health and Human Servs.*, 945 F.2d 1365 (6th Cir. 1991). As the Sixth Circuit noted in *Jones*:

> The measure of an individual's pain cannot be easily reduced to a matter of neat calculations. There are no x-rays that can be taken that would objectively show the precise level of agony that an individual is experiencing. Hence, in evaluating the intensity and persistence of pain, both physicians and laymen alike, must often engage in guesswork.

*Id.* at 1369. Despite the inexact nature of measuring a claimant's pain, the ALJ must nevertheless evaluate the alleged pain and determine whether the claimant suffers from disabling pain.

While it is well-settled that pain may be so severe that it constitutes a disability, a disability cannot be established by subjective complaints of pain alone. "An individual's statement as to pain or other symptoms shall not *alone* be conclusive evidence of disability." *Cohen v. Secretary of Department of Health and Human Servs.*, 964 F.2d 524, 529 (6th Cir. 1992), quoting 42 U.S.C. § 423(d)(5)(A) (emphasis added). Rather, objective medical evidence that confirms the existence of pain is required. *Shavers v. Secretary of Health and Human Services*, 839 F.2d 232, 234-235 (6th Cir.1987). In *Duncan v. Secretary of Health and Human Servs.*, 801 F.2d 847 (6th Cir. 1986), the Sixth Circuit fashioned a two-prong test for evaluating an alleged disability based upon pain. *See Felisky v. Bowen*, 35 F.3d 1027, 1037-1039 (6th Cir. 1994) (the *Duncan* analysis is a "succinct form" of the Social Security Administration's guidelines for use in analyzing a claimant's subjective complaints of pain as set forth in 20 C.F.R. § 404.1529).

To meet the first prong of the *Duncan* test, the claimant must present objective evidence of an underlying medical condition. *Duncan*, 801 F.2d 847 at 853.  In order for a claimant to meet the second prong of the *Duncan* test  "(1) there must be objective medical evidence to confirm the severity of the alleged pain arising from that condition, or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain." *Id.*

In reviewing plaintiff's claim, it is the ALJ's function to resolve conflicts in the evidence and determine issues of credibility. *See  Siterlet v. Secretary of Health and Human Servs.*, 823 F. 2d 918, 920 (6th Cir. 1987) (per curiam); *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984). "It [i]s for the Secretary and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony."  *Heston*, 245 F.3d at 536, *quoting Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972).  When discrepancies exist between the claimant's testimony and the written record, the reviewing court does not substitute its credibility findings for those of the ALJ.  *See Bentley v. Commissioner*, 23 Fed. Appx. 434, 436 (6th Cir. 2001); *Gooch v. Secretary of Health and Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987).

**First prong of the *Duncan* test**

The ALJ found that plaintiff suffered from the severe impairment of  degenerative disc disease (AR 20).  Plaintiff has presented objective evidence of an underlying medical condition. Accordingly, he has satisfied the first prong of the *Duncan* test.

**Second prong of the *Duncan* test**

With respect to the first part of the second prong of the *Duncan* test, plaintiff must demonstrate that the objective medical evidence confirms the severity of his pain.  A claimant's self-

reports of pain do not constitute objective medical evidence. *See McGuire v. Commissioner*, No. 98-1502, 1999 WL 196508 at * 7 (6th Cir. March 25, 1999 ), *citing Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990). Reliable indicators of intense pain include muscle atrophy, reduced range of motion, muscle spasms, and motor disruption. *Jones*, 945 F.2d at 1370. Paul Resnik, M.D., of the Sparrow Regional Pain Management Center examined plaintiff in May 2002, and found: that "[l]umbar spine range of motion from waist reveals full range of motion with flexion, extension, rotation and lateral bending and no pain in the lower back with any of these maneuvers;" no spasms; and that the "lower extremity motor strength and sensation [were] all within normal limits" (AR 118-19). In February 2004, Mark M. Richardson, M.D., reported that plaintiff had normal joints and muscles with the exception of the lumbar spine, noting that plaintiff had tenderness over lumbar vertebra and his "[r]ange of motion [was] decreased and [m]ovements painful" (AR 230). In March 2004, Yi-Shuan Judy Lee, M.D., Ph.D. of Comprehensive Pain Management, PLC reported that plaintiff had decreased sensation in the left calf, and "slightly decreased strength at left hip flexion, knee extension, knee flexion, and plantar flexion" (AR 190). Based on this record, it appears that some examining physicians found that plaintiff had a decreased range of motion and motor disruption, two reliable indicators of intense pain.

The ALJ may also consider plaintiff's household and social activities in evaluating complaints of pain. *See Blacha v. Secretary of Health and Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). Here, the ALJ noted that plaintiff cooks, does errands, vacuums, does laundry, watches television, makes beds and reads the newspaper (AR 16, 311). Plaintiff attended 10 physical therapy sessions from March 13, 2002 through April 3, 2002 (AR 141-56). He called on April 8, 2002 to cancel his remaining appointments "secondary to reporting that he was doing well" (AR 141). The

physical therapist noted that plaintiff's functioning level had improved, but a discharge condition and prognosis could not be determined because of the cancellation (AR 141).  In December 2002, plaintiff injured his finger while scrubbing some carpet at his father's house in Arizona (AR 237-38, 312).

At the hearing, plaintiff testified that he can rarely sit for more than 20 minutes without being in a lot of discomfort, that two or three times a week he gets a stabbing pain in his big toe lasting five minutes to five hours, that he has to lay down during these episodes, that his left leg can start hurting when walking five to 25 minutes, that he can probably lift 20 pounds, that he can stand for a maximum of 15 minutes, that he rarely sleeps more than two hours at a time and that on his "bad days" (which occur 10 to 12 times per month) he can rarely leave his bed or couch (AR 305-11).  Plaintiff testified that he could be laying down for 10 to 22 hours in a 24 hour-period (AR 315).  Plaintiff also testified that he had difficulty traveling for long periods (AR 312).

After reviewing the record, the ALJ found that plaintiff's testimony regarding the extent and severity of his impairments and his functional limitations was not fully credible (AR 17).  Specifically, the ALJ found that plaintiff's testimony that he had problems traveling long distances was not consistent with his trip to Arizona (AR 17).  The ALJ also noted that while plaintiff testified that he had trouble sleeping, he was not taking any medication for his sleeping problems (AR 17, 315).  Moreover, the ALJ observed that plaintiff's attempt to obtain unemployment benefits in September 2002 "suggests that he did not consider himself unable to work" (AR 17, 240). *See Workman v. Commissioner of Social Security*, 105 Fed. Appx. 794, 801 (6th Cir. 2004) ("[a]pplications for unemployment and disability benefits are inherently inconsistent").  Discrepancies exist between plaintiff's testimony and the other evidence in the record to support the

ALJ's credibility determination.  Based on this record, the court concludes that plaintiff has not demonstrated that the objective medical evidence confirms the severity of his pain.

Finally, plaintiff fails to meet the second part of the second prong of the *Duncan* test because he provides no objective medical evidence indicating that his condition "is of a severity which can reasonably be expected to give rise to the alleged pain." *Duncan*, 801 F.2d at 853.  The MRI of plaintiff's lumbar spine on April 20, 2002  "revealed no significant displacement of the nerve roots, no evidence of recurrent disc herniation and the bilateral neural foraminal narrowing remained stable" (AR 17,  127).  The lack of nerve root irritation or muscle wasting does not  indicate the type of severe medical condition which can reasonably be expected to give rise to the alleged disabling pain.  *See, e.g., Barrow v. Secretary of Health & Human Servs.*, No. 87-6032, 1988 WL 103333 at *4 (6th Cir. Oct. 4, 1988) (degenerative disc changes in thoracic spine with no objective evidence of nerve root irritation or muscle wasting does not satisfy the *Duncan* standard).

In May 2002, a neurologist, G.M. Thomas, M.D., recounted plaintiff's history of "two disc type procedures at the L5-S1 level on the left" that were performed in 1998 and November 2000 (AR 123).  Dr. Thomas indicated that a possible surgical option may be available, but plaintiff expressed no interest in surgery.  A conservative course of treatment suggests that he does not suffer from a condition expected to give rise to disabling pain.  *See, e.g., McKenzie v. Commissioner*, No. 99-3400, 2000 WL 687680 at * 4 (6th Cir. May 19, 2000);   *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998); *Bryant v. Chater*, No. 96-3426,  1997 WL 160372 at * 4 (6th Cir. April 4, 1997).

In July 2002, plaintiff's treating physician, Dr. Richardson, noted that plaintiff had received injections through a pain clinic which resulted in "some changes in his discomfort" but did not provide complete relief (AR 122).  At that time, plaintiff expressed concern that he would lose

his job that week unless he returned to full duty and while he could apply for any other position within his company, plaintiff felt that his employer would not offer him another job (AR 122).  Dr. Richardson believed that plaintiff was not disabled by his back pain, but that he would have to be employed in a position with "limited lifting, bending, twisting, etc.," and "would need the freedom to be able to sit or stand as tolerated" (AR 122).

In December 2004, Dr. Richardson stated in a letter that plaintiff suffered from chronic low back pain and left lower extremity pain, that he was not a candidate for further surgery, that he "is unable to st or stand for any prolonged period of time" and "needs to change position from sitting to standing or the reverse on a frequent basis to try and relieve his pain" (AR 181). In  a medical assessment form completed in that same month, Dr. Richardson opined that plaintiff could sit, stand or walk for 1/4 hour at a time; that he could sit 4 hours, stand 2 hours, walk 2 hours and "sit/stand as needed" for 6 hours in an 8-hour workday (AR 182).  Dr. Richardson referenced plaintiff's "post laminectomy syndrome with fibrosis on MRI" in support of his conclusions (AR 182).  He felt that plaintiff could frequently lift and carry 5 pounds and occasionally lift and carry 10 pounds (AR 182).  He opined that plaintiff could not use his left foot for repetitive movements (AR 183).  In addition, plaintiff could never crouch, crawl or stoop, and should avoid unprotected heights and moving machinery (AR 183-84). Although Dr. Richardson believed that plaintiff's condition prevented him from performing his previous work as a pressman, he felt that plaintiff was able to work with restrictions.

The ALJ's RFC determination, limiting plaintiff to light exertional work, a sit/stand option, no prolonged walking, and no work with foot controls (AR 20) is consistent with Dr. Richardson's restrictions, plaintiff's testimony that he could probably lift 20 pounds, and the physical

residual functional capacity assessment prepared by the non-examining DDS physician (AR 20, 122, 173-84, 307). The court's analysis does not suggest that plaintiff does not suffer from pain. Rather, the evidence indicates only that plaintiff's pain was not disabling under the *Duncan* standard. Even if this court might reach a different conclusion considering the evidence *de novo,* there is no basis on this limited appellate review to disturb the ALJ's decision.

## IV. Recommendation

I respectfully recommend that the Commissioner's decision be affirmed.

Dated: May 30, 2006 　　　　　　　　　　　 /s/ Hugh W. Brenneman, Jr.
　　　　　　　　　　　　　　　　　　　　　　 Hugh W. Brenneman, Jr.
　　　　　　　　　　　　　　　　　　　　　　 United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).